STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles J. BURROUGHS, Defendant-Appellant.

Supreme Court

*No. 82–1238–CR. Argued January 4, 1984.— Decided February 28, 1984.*

(Also reported in 344 N.W.2d 149.)

For the defendant-appellant there were briefs by *Alfred F. Decker,* Kenosha, and oral argument by *Mr. Decker.*

For the plaintiff-respondent the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

STEINMETZ, J.   The first issue in this case is whether defendant's trial counsel ineffectively represented the defendant by failing to file a notice of alibi pursuant to sec. 971.23 (8), Stats.[1]

[1] Sec. 971.23(8), Stats., provides:

"(8) NOTICE OF ALIBI.   (a) If the defendant intends to rely upon an alibi as a defense, the defendant shall give notice to the district attorney at the arraignment or at least 15 days before trial stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known. If at the close of the state's case the defendant withdraws the alibi or if at the close of the defendant's case the defendant does not call some or any of the alibi witnesses, the state shall not comment on the defendant's withdrawal or on the

The second issue is whether a criminally charged defendant, failing to file a notice of alibi pursuant to statute, has the constitutional right under the United States or Wisconsin Constitutions nevertheless to testify as to where he was at the time of the crime if he claims he was not at the scene of its commission.

The trial court did not allow the defendant to call any witnesses nor allow him to testify as to his whereabouts, since he failed to file the notice of alibi. The defendant was convicted after a jury trial of violating sec. 940.225 (2) (a), Stats., second-degree sexual assault, and was sentenced to an indeterminate term of not more than eight years. The defendant filed a motion for vacation of judgment. The public defender's office appointed new counsel who filed a motion for a new trial which was denied. The defendant then filed a notice of appeal from the judgment of conviction and from the order denying postconviction motions.

The defendant had been represented by a public defender's staff attorney at the trial, and since one claim of the defendant was that he received ineffective trial counsel representation, the appellate attorney, not a member of

failure to call some or any of the alibi witnesses. The state shall not call any alibi witnesses not called by the defendant for the purpose of impeaching the defendant's credibility with regard to the alibi notice. Nothing in this section may prohibit the state from calling said alibi witnesses for any other purpose.

"(b) In default of such notice, no evidence of the alibi shall be received unless the court, for cause, orders otherwise.

"(c) The court may enlarge the time for filing a notice of alibi as provided in par. (a) for cause.

"(d) Within 10 days after receipt of the notice of alibi, or such other time as the court orders, the district attorney shall furnish the defendant notice in writing of the names and addresses, if known, of any witnesses whom the state proposes to offer in rebuttal to discredit the defendant's alibi. In default of such notice, no rebuttal evidence on the alibi issue shall be received unless the court, for cause, orders otherwise."

that staff, was appointed by that office for the postconviction motions and appeal. The court of appeals certified the case to this court, which we accepted.

The victim alleges and testified that the defendant had nonconsensual sexual intercourse with her during the morning of June 30, 1981. The defendant stated at trial that he did have sexual intercourse with the victim during that morning but it was consensual, and after that act but the same morning, he was not even in Kenosha.

In the complaint, the time of the alleged assault was placed at approximately 8:30 a.m. on June 30, 1981. At the preliminary examination, in answer to the district attorney's question, the victim testified the assault took place on that date at approximately 8:30 a.m. But later during cross-examination, she testified that the defendant arrived at her living quarters on that date between 7:00 and 7:30 a.m. and she claimed that during the investigation she had never told the district attorney the 8:30 a.m. time for the assault. She additionally testified that the defendant was with her for 45 minutes to one hour.

The defendant testified he had consensual intercourse with the victim on June 30, 1981. His attorney stated to the court that the defendant claimed the act occurred at 5:30 a.m. and the defendant was out of town later that morning. At the trial, the defendant testified he arrived at the victim's house around 6:15 or 6:20 a.m. and that he left her 20 to 30 minutes later, therefore, at about 6:50 a.m. When comparing the estimated times in the testimony of the victim and the defendant, the time differences are not substantial. The victim said the act was approximately between 7:00 and 8:00 a.m., which was when she arrived at her cousin's house and was the first time she looked at a clock. The defendant testified the act was approximately between 6:15 and 6:50 a.m. This computation ignores the times as stated by the district attorney and defense counsel, since those are not evidence.

Detective Serpe, a Kenosha police officer, testified that at the time of the defendant's arrest, the defendant told him that he had been in Chicago the night of June 29, 1981, and had not returned to Kenosha until it was light out on June 30, the day of the offense. The state had several witnesses testify as to their joint activities with the defendant and victim during the night and early hours of June 29 and 30, concluding their activities as a group at 5:30 a.m. on June 30. All these activities before 5:30 a.m. with the defendant, victim and witnesses took place in Kenosha. At the trial, the defendant said he told the officer he had been in Zion (Illinois) earlier on June 30 with no more specificity.

At the beginning of the second day of trial after the prosecution rested, the defense counsel advised the prosecutor of the defendant's defense, which would be that the defendant would testify he had consensual sexual relations with the victim on June 30 and then left Kenosha to go to Zion, Illinois, and was not in the Kenosha area at 7:00 to 7:30 a.m. when the victim testified on trial that the act occurred. It must be noted, however, that by the defendant's estimate of time as testified, he could have left her house as late as 6:50 a.m.

Defendant's trial counsel then advised the judge he had not filed a notice of alibi since the defendant's offered evidence was not alibi evidence "because [the defendant is] admitting to the main facts in the complaint, that he did have sexual intercourse with [her]" and that "[o]ur defense is lack of consent. That's where the alibi statute fails in this instance. Not relying on alibi as a defense. . . . Alibi is not the defense. Consent is the defense." It is difficult for this court to understand how a claim of being someplace other than at the scene of a crime can be anything other than a defense; however, in this case, due to the testimony of the time of the act by the victim and defendant, there is not a sufficient discrep-

ancy in time to allow the defendant to realistically show he was elsewhere when the act occurred.

The trial court then received an offer of proof in regard to the potential testimony of an "alibi" witness, Jerry Hall. The defendant's attorney stated:

"He would testify that he met the Defendant and a person named 'Henry McNet' (phonetically) in Zion, Illinois on the morning of June 30th, 1981, at approximately— between seven and 7:30 a.m., that they set out in a motor vehicle for approximately one hour on that date and at that time talking and drinking and that after that time, Charlie Burroughs left, said he was going back to Kenosha."

The defendant's counsel informed the court that the defendant wished to testify that he had sexual intercourse with the victim sometime after 5:30 a.m. and that he was in Zion, Illinois, sometime between 7:00 and 7:30 a.m. and stayed for about one hour before returning to Kenosha. This statement of counsel was not consistent with the defendant's later testimony that he left the victim's house at approximately 6:50 a.m. and that he was in her house only 20 to 30 minutes arriving there between 6:15 and 6:20 a.m.

Certainly, the victim's testimony as to the time of the act came as no surprise to defendant or his attorney since from her preliminary examination testimony, they knew the victim placed defendant's arrival at a time about 10 minutes different than the defendant's estimate of his departure from her house. If defendant wanted to testify where he was after 6:15 a.m., he had opportunity to file the notice of alibi. This would conflict with his testimony that placed him in her house until 6:50 a.m. The defense counsel stated that the defendant would testify that the act occurred at 5:30 a.m. There is no inconsistency for the defendant to admit to a consensual act of sexual intercourse with the victim from 5:30 to 6:00 a.m. and then to claim to be elsewhere other than her apartment

after 6:00 a.m.; but that was his attorney's statement of timing, not the defendant's. The attorney's statement is inconsistent with the defendant's testimony at trial that the act occurred between 6:15 and 6:50 a.m.

Defendant's attorney chose deliberately not to file the notice of alibi, but rather rely on the claim of the act being a consensual act and the record shows he had arguable reasons. Defendant's counsel stated several times to the court that an alibi was not the defendant's defense; the only issue was consent. He told the court his argument to the jury was going to be that the defendant and victim had consensual sexual intercourse.

Over the state's objection, the defendant called Thomas Wahl, a microserologist with the Wisconsin State Department of Justice Regional Crime Lab, New Berlin, Wisconsin, to testify. He testified the defendant is a type B secretor and the victim is a type B nonsecretor. He testified that he examined dry saliva specimens from the victim and the defendant and was able to determine that the victim was a nonsecretor and the defendant was a secretor. Secretors are persons who secrete in their body fluids, such as saliva, vaginal secretion, and semen, their blood type in very high amounts. Nonsecretors do not secrete blood group type in their body secretions. A semen stain on the sheet retrieved from the victim's bedroom originated from a type B secretor consistent with the defendant's type. The semen stain on the victim's underpants originated from a nonsecretor not consistent with the defendant's type. Evidence of two types of semen were present on an elongated stain on the victim's blue jeans. The defendant's attorney stated it was offered so, "The jury can take whatever inference it wants out of that testimony," of the different type of semen from the defendant's. However, the victim testified to an act of consensual intercourse with her boyfriend, Frazer [spelling not certain in the record] Burroughs, the defendant's brother, ap-

proximately a week before June 30, who had since left for Germany in military service, with the implication that he was the source of the other stains on the examined evidence. In final argument, defendant's counsel stated the victim's testimony explaining the other semen stains "[d]oesn't sound reasonable here."

Dr. Winston Cozine, a pathologist, examined some vaginal specimens (smears) taken from the victim at the hospital at 9:45 a.m. on June 30. He found sperm present and believed to a reasonable degree of medical and scientific certainty that sexual intercourse occurred within 24 hours preceding the retrieval of the specimens since some sperms were "moving" on his examination, and it would have been most unusual for the sex act not to have occurred within the preceding 12 hours.

Defendant's appellate counsel drew from the total scientific evidence the conclusion that someone other than the defendant committed a sexual assault on the victim on the morning in question after the defendant left her. That conclusion is lacking any logical relationship to the scientific evidence. There is no testimony that the moving sperm in the vaginal smear were from a nonsecretor nor that the moving sperm observed by the doctor could be compared to the semen stains on the sheet, underpants or blue jeans as to blood type. There is testimony of Thomas Wahl that the stains on the sheet, underpants and blue jeans were "degraded," "some old," "crusty" and that there is no scientific method to determine how old the semen stains on the cloth were. The scientific and medical evidence offered does not even suggest an act of sexual intercourse participated in by the victim and another male between the time of the act with the defendant, whether consensual or not, at 5:30, 6:00 or 7:00 a.m., or when she hysterically reported the attack to women relatives and friends at 8:00 a.m., or when she was examined by Dr. Cozine at 9:45 a.m. To claim this evidence

proves that the victim had sexual intercourse with another male subsequent to the defendant's act with her is pure speculation without any evidentiary foundation and significantly displays why trials must be held to an orderly procedure and not a shotgun method. This trial judge stated he was not misled by what the defendant's attorney was attempting to do by not filing a notice of alibi on these facts and yet moving during the trial to have alibi witnesses and the defendant testify as to an alibi. The trial judge stated:

"The first line of defense for Mr. Burroughs was the tactic of admitting the act of intercourse, but stating that it was done with consent. This is a very common defense tactic in sexual assault cases, and obviously originated with the defendant himself. Burroughs had given a statement to Detective Serpe that he had been in Chicago and returned about daybreak to Kenosha. In response to this, the State produced a number of witnesses placing Burroughs at various taverns and nightclubs during the evening. Daybreak at this time of year would have been around four o'clock and sunrise is somewhere near five o'clock.

"Mr. Dowse, the defense counsel, did not take advantage of Section 971.23(3) because this would have required that he disclose his witnesses to the State, and quite possibly, he was hoping that he might create some sort of doubt in the minds of the jury by having the defendant testify that the act of intercourse took place at a different time than the victim claimed and having in reserve witnesses to corroborate this.

"It amounted to a sort of a 'one-legged alibi,' and it was intended as a surprise 'doubt maker.' "

The trial judge analyzed the decision not to file a notice of alibi as a deliberate strategic move on defense counsel's part to avoid disclosing his alibi witnesses to the state so that it could not investigate them. The defendant knew from the complaint and preliminary examination testimony of the victim that her statement as to the time of

the act differed in varying degrees from his. The notice of alibi could have been filed and then the alibi not used by the defendant during the trial, depending on the time the victim testified to for the act, without any prejudice to the defendant. Unlike the statute, this is an option for the defendant.

To allow the defense counsel not to file the notice of alibi suspecting its relevancy, and then to permit an offer of it during the trial, would interrupt the orderly process of the trial. Sec. 971.23 (8), Stats., eliminates use of the alibi defense under such circumstances, unless the judge allows it which is within the judge's discretion. In this case the judge properly denied the defendant's request to present alibi testimony since he had not filed the notice of alibi, even though he was well notified of the time discrepancies of the act between his version and the victim's version. This is especially true since the defendant was not relying on an alibi as a defense, but only on consent. There was only unfounded conjecture as to the victim engaging in sexual intercourse with a man other than the defendant after he left her house, and that does not rise to the level of being persuasively relevant or competent evidence.

In *Swonger v. State*, 54 Wis. 2d 468, 473, 195 N.W.2d 598 (1972), this court's latest relevant analysis of sec. 971.23 (8), Stats., we stated:

"We have held that the statute requires notice to be given even when the alibi consists of nothing more than the defendant's uncorroborated testimony that he was elsewhere at the time the crime was committed. *State ex rel. Simos v. Burke* (1968), 41 Wis. 2d 129, 163 N.W.2d 177. This court has made it plain that evidence of alibi includes 'any testimony placing the defendant somewhere else at the time of the crime.' *State ex rel. Simos v. Burke, supra,* at page 134. In addition, a mistaken interpretation of the requirements of the statute, or even total

lack of awareness of the existence of the statute is insufficient to constitute 'good cause.' *See: State v. Selbach* (1955), 268 Wis. 538, 68 N.W.2d 37. Therefore, the trial court properly excluded the offered testimony."

In *State ex rel. Simos v. Burke,* 41 Wis. 2d 129, 136–38, 163 N.W.2d 177 (1968), this court stated:

"The Wisconsin Constitution provides that 'In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . .'[12] The petitioner's claim is that a defendant wishing to give alibi testimony is denied the right to be heard, at least unless he has previously submitted the notice of alibi. Assuming the right of a defendant under either or both state and federal constitutions to testify as a witness in his own behalf, it does not follow that such right outlaws any and all procedural requirements or conditions as to notice.

"When any witness takes the stand, he swears or affirms that he will tell the truth, the whole truth and nothing but the truth. What is constitutionally protected is the right of a defendant to testify truthfully in his own behalf. An alibi is not one of several alternative defenses that can be simultaneously asserted. If what the statute terms an alibi is founded in truth and in fact, the defendant was not present to commit the offense charged. If this is the situation, the defendant suffers no prejudice by the requirement of advance notice of intention to establish such fact. If we are discussing the right of a defendant to defer until the moment of his testifying the election between alternative and inconsistent alibis, we have left the concept of the trial as a search for truth far behind. Where this situation was presented to this court, [footnote omitted] we rejected the claimed right of a defendant to abandon the alibi of which he had given notice and substitute a new and different one at the time of trial. [footnote omitted] Where there is even a pretrial change of alibi, this court has permitted cross-examination and introduction of the initial alibi notice as bearing upon an issue raised by the choice and change of mind of the defendant. [footnote omitted] These decisions, and the statute on which they are based, do not limit in any way the right of a defendant to testify truthfully in his

own behalf. The condition of prior notice as to alibi testimony, like the test as to materiality and relevancy, does not invade the right of a defendant to testify in his defense.

---

"[12] Art. I, sec. 7, Wisconsin Constitution."

Since the *Swonger* and *Simos* analysis of the alibi statute, the Seventh Circuit Court of Appeals decided that even though the United States Supreme Court has never expressly held that a defendant in a criminal trial has a constitutional right to testify in his own behalf, that right exists. *Alicea v. Gagnon,* 675 F.2d 913 (7th Cir. 1982). In analyzing United States Supreme Court cases, the Seventh Circuit came to the conclusion that the opportunity for the defendant to testify is not merely a privilege, but a right, *Id.* at 921, since the United States Supreme Court's statements read together "seem to take for granted" the constitutional basis of the right to testify. The *Alicea* court then stated:

"If the search for truth is to have meaning, surely the most important figure in the controversy, whose very freedom hangs in the balance, must have a right to participate directly. We believe the fifth, sixth, and fourteenth amendments require no less. We therefore hold that a criminal defendant has a constitutional right to testify in his own behalf under the fifth, sixth, and fourteenth amendments." *Id.* at 923.

The *Alicea* court further held that its own previous case of *Sims v. Lane,* 411 F.2d 661 (7th Cir. 1969), *cert. denied,* 396 U.S. 943, holding otherwise had to be partially overruled. In effect also, *Alicea* held that our cases of *Swonger* and *Simos* were incorrect in requiring a notice of alibi to be filed under sec. 971.23 (8), Stats., before the defendant himself could testify that he was elsewhere at the time of the crime. That interpretation of the statute made by this court was therefore not proper, since it did not recognize the defendant's constitutional right to tes-

tify. We disagree with that interpretation of Wisconsin's alibi statute. The statute does not deny the defendant the right to testify, but rather, only requires that if he is going to claim not to have been at the scene of the crime, then he must notify the state where he was. That is not a denial of a right to testify; it is only a reasonable requirement needed to achieve orderly trials and procedures. We have eliminated surprise as much as possible in civil and criminal trials in Wisconsin by their respective discovery statutes.[2] If the defendant files a notice of alibi as required, he is not restricted as to testifying or calling noticed witnesses. In fact, he can abandon his alibi if he wishes by not using it at trial and not suffer negative consequences.

If the defendant were allowed to testify even though he did not file a notice of alibi, problems could be caused for the jury. If the defendant claimed he was with other persons at another location at the time of the offense, the jury logically might want to hear those identified persons testify as to the truthfulness of the defendant's claim. If those persons did not then testify, the jury would be in a quandary and no instructions could alleviate its questions without prejudice to the defendant or the state.

As the United States Supreme Court held in *Harris v. New York,* 401 U.S. 222, 225 (1971) : "Every criminal defendant is *privileged* to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." (Emphasis added.) The defendant is privileged to testify; that is not the same as having the unlimited constitutional right to testify in the manner of his choosing.

Other reasonable limitations have been placed on the defendant's right to testify in his criminal trial. We held in *Lange v. State,* 54 Wis. 2d 569, 575, 196 N.W.2d 680

[2] Civil discovery, ch. 804, Stats.; criminal discovery, sec. 971.23, Stats.

(1972), that a defendant's punishment could not be increased even though he testified falsely but that should be the subject of a separate charge and conviction for perjury. A defendant does not have the right to testify untruthfully.

Also, we held in *State v. Mendoza,* 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980), that if the defendant gives a confession which is excludable, due to no *Miranda*[3] warnings or insufficient warnings, that confession may be used on rebuttal for impeachment purposes with only voluntariness being a possible issue. *See also Harris v. New York,* 401 U.S. 222, in which the rule originated.

In *State v. Albright,* 96 Wis. 2d 122, 133, 291 N.W.2d 487 (1980), we held that the defendant's attorney may waive the defendant's right to testify, if not disapproved by the defendant. *Albright* held that a defendant in a criminal action has a due process constitutional right to testify on his own behalf. However, neither this court nor the United States Supreme Court has ever held that there cannot be reasonable limitations or conditions placed on this right. The defendant's right to testify is limited to being truthful and relevant and, if in the form of an alibi, subject to notice pursuant to sec. 971.23 (8), Stats.

The *Alicea* court relied on *Ashe v. North Carolina,* 586 F.2d 334 (4th Cir. 1978) ; however, *Ashe* stated in a footnote that it is established that a defendant has a constitutional right to testify in his own behalf, citing *Harris.* 586 F.2d at 336 n. 3.

*Alicea* also relied for support on *Faretta v. California,* 422 U.S. 806, 819 (1975) at n. 15, where the Supreme Court discussing the sixth amendment, stated that a defendant has the right to testify on his own behalf, also citing *Harris,* 401 U.S. at 225. In *Harris* at 225 the court's holding was: "Every criminal defendant is priv-

---

[3] *Miranda v. Arizona,* 384 U.S. 436 (1966).

ileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury."

*Alicea*, 675 F.2d at 925, recognized that "there are situations where preclusion is a necessary sanction, such as a defendant's intentional suppression of alibi evidence to gain tactical advantage," but then held *Alicea* was not such a case and therefore the Wisconsin alibi notice statute's preclusion sanctions as to Alicea were *unconstitutionally applied*. The *Alicea* court did not find sec. 971.23(8), Stats., Wisconsin alibi statute unconstitutional, but only that it was unconstitutionally applied to Alicea who did not intend to rely on the corroboration of any other witnesses for his alibi. The *Alicea* court held: "But neither our decisions nor those of the Supreme Court have resolved the precise issue raised by Alicea regarding the constitutionality of applying an exclusion sanction against the testimony of the defendant himself for failure to provide proper notice." *Id.* at 917. That court repeated its holding as follows: "As is apparent from our extended analysis of United States Supreme Court and state cases examining alibi-notice laws, none of these decisions except *Simos* addressed the constitutional dimensions of applying the preclusion sanction against a defendant. For the reasons expressed below, we decline to follow the position adopted in *Simos*." *Id.* at 920. The position adopted in *Simos* was that the alibi statute did not deprive the defendant of the opportunity of testifying truthfully, as long as a notice of alibi was given or was waived by the trial court. However, the thrust of *Alicea* was to deny the application of the alibi statute to the facts in that case.

The discretion given to the trial judge in the statute must be considered when examining the statute's constitutionality. If the defendant is caught by surprise at trial due to the testimony as to the time of the offense, the

judge can grant the defendant his right to testify and adjourn for the purpose of allowing the state to investigate his alibi. Whenever the trial judge determines an injustice would occur if the defendant is not allowed to testify as to his alibi, the judge may exercise the statutory discretion.

The trial judge in the instant case held that the failure to file the notice of alibi was a deliberate tactic to act as a surprise for the jury. We hold that on this record the trial court did not abuse its discretion in making that finding and, in addition, this was not even a case where an alibi was appropriate, since the defendant admitted an act of sexual intercourse with the victim on the morning in issue and there was no evidence she participated in any other act of sexual intercourse after he left her living quarters and before 8:00 a.m. that day when she presented herself to other witnesses. His only defense therefore was consent as repeatedly stated by his trial counsel.

As to the first issue in this case, the manner in which to present an ineffective assistance of trial counsel issue is by motion after verdict. Trial counsel is called as a witness and asked the reasons for decisions made during trial in order to determine whether they were strategic and then the test set out by this court in *State v. Harper,* 57 Wis. 2d 543, 557, 205 N.W.2d 1 (1973) and *State v. Machner,* 92 Wis. 2d 797, 802, 285 N.W.2d 905 (Ct. App. 1979) is applied. That test is: "[T]he representation must be equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to clients who had privately retained his services." *Harper,* 57 Wis. 2d at 557. We stated further in *Harper:*

"In considering alleged incompetency of counsel, one should not by hindsight reconstruct the ideal defense. The test of effectiveness is much broader and an accused is not entitled to the ideal, perfect defense or the best de-

fense but only to one which under all the facts gives him reasonably effective representation." *Id.* at 556–57.

Applying that test, we find that this defendant received effective legal representation.

The trial counsel was called as a witness in the motion for a new trial by subsequently appointed counsel; however, he was not asked one question as to why he did not file a notice of alibi. He was only asked why he did not call a witness who the defendant identified for him who would have had only collateral information. He testified he decided not to call her since she could not have testified on a collateral issue and if she did, she had a criminal record and poor reputation and therefore would be weak in credibility.

However, asking trial counsel his reasoning in deciding not to file a notice of alibi would not have been beneficial in this case since during the trial, counsel in a statement to the court gave his reason for not filing a notice of alibi as follows: "That's [alibi] not our defense. Our defense is lack of consent. That's where the alibi statute fails in this instance. Not relying on alibi as a defense." Later he stated: "Alibi is not the defense. Consent is the defense."

The trial counsel offered Thomas Wahl's testimony under sec. 972.11(2)(b)2, Stats.,[4] as an exception to sec.

---

[4] Sec. 972.11(2)(b)2, Stats., provides as follows:

"(2) . . . (b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

". . . .

"2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered."

972.11(2)(b), and the court allowed it on that basis. This evidence of two types of semen being present on the bed sheet and clothing was used by the trial counsel to create inference and doubt as to the victim's credibility.

In addition, as to the attorney's competency, the record reveals the defense attorney filed a motion in limine to rule out any testimony of the defendant firing a gun into the air while outside the victim's house on June 30 and firing it in the company of the others who testified they were with him and the victim before 5:30 a.m. The defendant's attorney succeeded in keeping out this evidence, even though the victim had testified that during the sexual act the defendant had threatened to kill her and had grabbed toward the side of the bed for a gun which she saw him possess earlier that day. This is another example of the competency displayed by the trial counsel.

The defendant relied on consent as his defense since there was no proof that rose above conjecture that the victim participated in another act of sexual intercourse during the morning of June 30 after the defendant left her house, which negated any alibi value.

The trial judge under sec. 971.23(8)(b), Stats., may allow evidence of alibi without notice if cause is demonstrated. The record will show on review whether the judge abused his discretion in not allowing an exception to the statutory requirements. In this case, the trial judge did not abuse his discretion by not allowing evidence of the claimed alibi. He saw it as an attempt to cause confusion in the orderly trial process based on conjecture and supposition, which the trial judge labeled as a tactic "intended as a surprise 'doubt maker.' "

Trial counsel met the test of providing representation for the defendant equal to that which an ordinarily prudent lawyer, skilled in criminal law, would have given to a client who privately retained him.

A criminally charged defendant has the right to testify at his own trial as to an alibi if he complies with the requirements of sec. 971.23(8), Stats., or is allowed to so testify without notice in the judge's discretion.

*By the Court.*—The judgment of the circuit court is affirmed.

WILLIAM A. BABLITCH, J. (dissenting). I dissent. The victim testified that the defendant sexually assaulted her sometime between 7:00 and 8:00 a.m. The defendant testified that he had consensual intercourse with the victim sometime between 6:15 and 6:50 a.m. The undisputed evidence indicated that two types of semen were found in the victim's blue jeans, one consistent with the defendant's type and one not. The defendant's attorney made an offer of proof that the defendant would testify that he was in Zion, Illinois, sometime between 7:00 and 7:30 a.m., and that he stayed there for an hour. The trial court refused to allow the defendant to so testify.

The majority opinion emphasizes the fact that "there is not a sufficient discrepancy in time" between the victim's testimony as to when she claimed the defendant sexually assaulted her and the defendant's testimony as to when he claimed to have consensual intercourse. That is correct, but it is not controlling. Had the defendant been allowed to testify as to where he was when the victim claimed to have been assaulted, he would have testified that he was someplace else. That is an alibi. This court has made it plain that evidence of alibi includes ". . . any testimony placing the defendant somewhere else at the time of the crime." *State ex rel. Simos v. Burke,* 41 Wis. 2d 129, 134, 163 N.W.2d 177 (1968).

Because the trial court refused to allow the defendant to testify as to where he was at the time the victim

claimed the offense occurred, and because that testimony would constitute an alibi, this case is squarely within the holding of *Alicea v. Gagnon,* 675 F.2d 913 (7th Cir 1982).

In *Alicea,* the court held: ". . . a criminal defendant has a constitutional right to testify in his own behalf under the fifth, sixth and fourteenth amendments." 675 F.2d at 923. In addition, in *State v. Albright,* 96 Wis. 2d 122, 129, 291 N.W.2d 487, cert. denied, 449 U.S. 957 (1980), this court held that ". . . there is a constitutional due process right on the part of the criminal defendant to testify in his own behalf."

The precise issue in *Alicea* concerned the constitutionality of applying Wisconsin's notice-of-alibi statute, sec. 971.23(8), Stats., to preclude the defendant's alibi testimony because he failed to provide proper notice as required by that provision. That issue is precisely the issue that this court is faced with. The majority opinion emphasizes Wisconsin's interest in achieving orderly trial procedure. In *Alicea,* the court recognized that concern, but nevertheless held:

"In addition, we do not consider Wisconsin's interest in facilitating the orderly administration of justice sufficiently important to override the accused's right to tell his version of the story. If a defendant takes the stand and denies his presence during the crime, the state can readily rebut his denial on cross-examination by asking the defendant to address the state's evidence. If for some reason the state considers its evidence significantly weakened by a defendant's unsubstantiated testimony, it should seek a continuance for further investigation, rather than seeking total preclusion of the defendant's testimony." 675 F.2d at 924.

There is nothing in the facts of this case to indicate that the state's interest in facilitating the orderly administration of justice could not have been accommodated had Burroughs been allowed to present his alibi testi-

mony. I am persuaded by the court's reasoning in *Alicea,* and would therefore hold that the Wisconsin alibi-notice statute's preclusion sanction was unconstitutionally applied against Burroughs because Burroughs was not allowed to testify as to his whereabouts at the time of the alleged offense. In addition, applying the test set forth in *Chapman v. California,* 386 U.S. 18, reh. denied, 386 U.S. 987 (1967), I would not find the error to be harmless beyond a reasonable doubt. First, there was evidence that the defendant could rely on to substantiate his claim that the victim had intercourse on that date with someone other than himself; second, unlike the defendant in *Alicea* who managed to introduce his alibi testimony despite the trial judge's preclusive ruling, Burroughs was unable to introduce his alibi testimony during trial. I would therefore reverse and remand.

I am authorized to state that JUSTICE SHIRLEY S. ABRAHAMSON joins in this dissent.