STATE of Wisconsin, Plaintiff-Respondent,

v.

Shon D. BROWN, Defendant-Appellant.†

Court of Appeals

*No. 02–1000–CR. Submitted on briefs October 11, 2002.—*
*Decided January 2, 2003.*

2003 WI App 34

(Also reported in 659 N.W.2d 110.)

† Petition to review denied 3-13-03.

On behalf of the defendant-appellant,the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Office*, Madison.

On behalf of the plaintiff-respondent,the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J.  Shon Brown appeals a judgment convicting him of operating a motor vehicle

without the owner's consent (OMVWOC) and theft of movable property. He claims the trial court erred when it (1) excluded his proposed testimony because he had not given notice of an alibi, and (2) failed to instruct the jury on territorial jurisdiction. We are not persuaded that the trial court erred in either regard and we thus affirm the judgment and order.

## BACKGROUND

¶ 2. The following facts were adduced at trial. A Madison moving company hired Brown as a truck driver. Shortly after being hired, he was assigned a moving job for a couple in Hartford, Wisconsin, to take their belongings to a storage location in Indianapolis, Indiana. The shipment consisted of all of the couple's household belongings. The wife was already staying with a relative in Indiana, having begun a new job there. Her husband followed after the household items were packed and loaded, taking with him only a few days' worth of clothes.

¶ 3. Brown's employer testified that Brown said he was very familiar with the area from his having lived in Indiana. Before his departure from Madison, the company gave him a cell phone and telephone contact numbers, and $250 cash to cover expenses. A motel room near Indianapolis had been reserved for him for the night of May 18th, and Brown was to deliver his shipment to the storage facility at 8:00 a.m. the next day. The storage facility notified Brown's employer on the morning of May 19th that Brown had not arrived with the shipment. Brown also had not checked in at the motel the night before. Brown's employer made

128

repeated attempts to reach Brown on the cell phone, but no one answered the calls or the messages left on voice mail.[1]

¶ 4. In addition to filing a police report, the employer contacted North American Van Lines, with whom it was affiliated. North American alerted agents and drivers nationwide to be on the lookout for what was now believed to be a stolen vehicle. Several days later a truck stop security guard in Gary, Indiana, notified the truck owner that he had spotted the vehicle. The security guard testified at trial that the driver had fueled the tractor-trailer and drove off without paying. The guard provided a description of the driver which resembled Brown, although he could not positively identify him as the driver.

¶ 5. The employer hired a private detective for several months but the detective was unable during that time to locate either Brown or the missing truck. The tractor-trailer was eventually located in November when a North American driver saw it at a truck stop in Gary, Indiana, approximately halfway between Madison and Indianapolis. The owners of the household goods recovered only some clothing, shoes, kitchenware, and photo albums. The moving company's insurer paid them more than $75,000 for the major possessions they had lost.

¶ 6. Brown was subsequently arrested and charged with three felonies: OMVWOC, theft by concealment of the tractor-trailer, and theft by concealment of the household goods. The Information charged

---

[1] The employer subsequently obtained a record of calls that were made with the phone from May 19th to May 24th, but none of the numbers matched any names Brown had given as references for his employment.

that all three offenses were committed "in Dane County, Wisconsin, on or about May 19, 2000."

¶ 7. A jury was selected on a Monday for the trial which was set to begin on Thursday. After completing voir dire, the court and counsel made a record regarding an earlier "conference in chambers with the District Attorney and defense attorney regarding potential testimony of the defendant." The court characterized the defendant's proposed testimony as follows: "in essence that testimony was that he did have possession of the vehicle, left the vehicle at a truck stop and left the keys and left." Brown's counsel agreed that Brown wished to testify that "I drove the truck there and I abandoned it for better prospects." The State objected to Brown testifying in that manner, asserting that the testimony constituted an alibi for which Brown had not given notice under Wis. Stat. § 971.23(8) (1999–2000).[2] In the State's view, Brown's proposed testimony was tantamount to his claiming "that he wasn't where the truck was concealed, and he wasn't with the truck as of May 19th and thereafter, which the State believes he was."

¶ 8. The court agreed with the State that the proposed testimony constituted an alibi. It offered to adjourn the trial so that Brown could give proper notice under the statute so as to permit the State to investigate Brown's claim regarding his whereabouts on and after May 19th. After conferring with counsel, however, Brown elected to proceed with the scheduled trial. The topic was revisited on the morning of trial. The court noted that "I did give the defendant the opportunity to, even as late as Monday, file a notice of alibi as to if he

___

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. Wisconsin Stat. § 971.23(8) is quoted below at ¶ 13 of this opinion.

says he wasn't there[,] where was he and who are his witnesses[?]" The court, relying in part on the supreme court's discussion in *State v. Burroughs*, 117 Wis. 2d 293, 344 N.W.2d 149 (1984), reaffirmed its ruling that under WIS. STAT. § 971.23(8), "if his testimony is of the nature that at the time of the commission of the crime he was not there, he was somewhere else, then he is required . . . to give notice of that alibi . . . to the State, prior to testifying in this vein."

¶ 9.  Brown neither testified nor called any defense witnesses. At the hearing on his postconviction motion, Brown's trial counsel explained that he understood the court's ruling to be that Brown was prohibited "from saying anything beyond I drove the truck into the State of Indiana," and that "anything about what he did with the truck" amounted to an alibi which could not be testified to without proper notice. Counsel further acknowledged that he and his client understood that Brown had not been precluded from testifying, but that he would only be permitted do so in "very limited fashion":

> [W]e decided, I think, that the small amount of testimony he would be able to give would be so—such a small part of what was involved in this case it would be worse than saying nothing at all . . . . I believed that he could testify, but we decided that that would be more damaging than not testifying at all.

¶ 10.  At the jury instruction conference, defense counsel requested an instruction "to reflect the proposition that the crime has to have been committed in the State of Wisconsin." After some discussion among the court and counsel, the court relied on WIS JI—CRIMINAL 268, which provides a "Law Note" but no pattern instruction on territorial jurisdiction. The court concluded, as the note suggests, that an instruction on

131

venue would adequately address any issue regarding Wisconsin's territorial jurisdiction over the charged offenses.[3] Accordingly, the court instructed jurors as follows:

> If you are satisfied beyond a reasonable doubt that the defendant committed the offense charged, you must consider whether the crime was committed in Dane County. A criminal case is required to be tried in the county where the crime was committed. However, where the offense has been committed in or against a vehicle, the trial may be in any county through which the vehicle has passed or in the county where the travel began or ended. Therefore, you must be satisfied beyond a reasonable doubt that the vehicle involved in this offense passed through Dane County or that the travel began or ended in Dane County.

*See* WIS JI—CRIMINAL 267.[4]

¶ 11. The jury returned guilty verdicts for OMV-WOC and the theft of the household goods, but it found Brown not guilty of theft of the truck. Brown moved for postconviction relief, citing as grounds an alleged lack

---

[3] "[W]here some acts are committed outside of the state—an instruction on venue as suggested in WIS JI—CRIMINAL 267 ought to be sufficient to cover the territorial jurisdiction issue as well." WIS JI—CRIMINAL 268.

[4] Defense counsel objected to the wording of the instruction at the conference: "I object to the way in which that's worded and the prohibition against arguing that if the crime occurs in Illinois, there's no venue." Counsel's final statement on the matter was as follows:

> I admit I'm having a little difficulty coming to grips with the proposition that the concealment of a vehicle—concealment of what is inside the vehicle are crimes that can be charged here even though it happens somewhere else, but I understand the ruling . . . . I understand the Court's ruling, and my objection, I guess, is on the record.

of territorial jurisdiction over the offenses, ineffective assistance of counsel, and the erroneous exclusion of Brown's proposed testimony. The court denied the motion and Brown appeals the judgment of conviction and the order denying postconviction relief.

## ANALYSIS

■

¶ 12. We first address whether the trial court erred in excluding Brown's testimony for lack of a notice of alibi pursuant to Wis. Stat. § 971.23(8). We review the trial court's decision to exclude Brown's testimony under the erroneous exercise of discretion standard, and if it has a reasonable basis, we will not disturb it. *State v. Guzman*, 2001 WI App 54, ¶ 19, 241 Wis. 2d 310, 624 N.W.2d 717, *review denied*, 2001 WI 88, 246 Wis. 2d 166, 630 N.W.2d 219 (Wis. May 8, 2001) (No. 99–2249–CR). Brown asserts that the testimony he proposed to give was not an "alibi" within the meaning of § 971.23(8)(a), a claim which presents a question of statutory interpretation subject to our de novo review. *See State v. Gribble*, 2001 WI App 227, ¶¶ 26–27 n.10, ¶ 31, 248 Wis. 2d 409, 636 N.W.2d 488, *review denied*, 2002 WI 2, 249 Wis. 2d 580, 638 N.W.2d 589 (Wis. Dec. 17, 2001) (No. 00–1821–CR). If the trial court's discretionary decision to exclude Brown's proposed testimony was based on an error of law, the court acted " 'beyond the limits of discretion.' " *State v. Wyss*, 124 Wis. 2d 681, 734, 370 N.W.2d 745 (1985) (citation omitted), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990).

¶ 13. The statute provides in relevant part as follows:

> (a) If the defendant intends to rely upon an alibi as a defense, the defendant shall give notice to the district

attorney at the arraignment or at least 15 days before trial stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known . . . .

(b) In default of such notice, no evidence of the alibi shall be received unless the court, for cause, orders otherwise.

WIS. STAT. § 971.23(8)(a) and (b). The statute does not define the term "alibi." The supreme court has offered the following definition in *State v. Shaw*, 58 Wis. 2d 25, · 205 N.W.2d 132 (1973), *overruled on other grounds by State v. Poellinger,* 153 Wis. 2d 493, 451 N.W.2d 752 (1990):

"The word, 'alibi,' is merely a shorthand method of describing a defense based on the fact that the accused was elsewhere at the time the alleged incident took place. The word, 'alibi,' is simply the Latin word for 'elsewhere.' "

*Id.* at 30 (citation omitted).

¶ 14. Brown contends that because WIS. STAT. § 971.23(8)(a) requires notice of the particular "place where the defendant claims to have been when the crime is alleged to have been committed," an "alibi" defense can arise only when the defendant knows the precise time and place the crime was allegedly committed. In this case, according to Brown, neither he nor the State knows these things. That is, in Brown's view, the crimes of which he was convicted took place sometime between May 18 and November 11, somewhere in Indiana or perhaps Illinois. Moreover, Brown asserts that because all he knows is that "he dropped off the truck at a truck stop and took a new job," he had neither

the intention nor the ability to provide "a detailed description of where he was for every moment from the time he dropped off the truck until it was found on November 11," and thus, his testimony could not constitute an alibi.[5]

¶ 15.  The State responds to Brown's arguments in a number of ways. It asserts that the offenses of which Brown was convicted were "continuous" or "continuing" offenses, and that a defendant's claim to "have been elsewhere for only *part* of the time" an offense was committed is an alibi requiring notice to the State. It also claims that Brown suffered no prejudice in the form of a breach of his rights to testify or present a defense because he was given the opportunity to provide a late notice of alibi and give his proposed testimony at a postponed trial, an opportunity he rejected. Finally, the State asserts that if we conclude the proposed testimony was not an alibi requiring notice, any error in the court's exclusion of the testimony was harmless because it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *State v. Harvey*, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189.

¶ 16.  We conclude, however, that there is a threshold problem in our consideration of whether Brown's proposed testimony constitutes an alibi for

---

[5] Brown relies on the following passage from *State v. Shaw*, 58 Wis. 2d 25, 205 N.W.2d 132 (1973), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990):  " '[S]ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all.' " *Id.* at 31 (citation omitted).

purposes of WIS. STAT. § 971.23(8). Although the State does not expressly argue that Brown made an insufficient offer of proof to preserve for appellate review the claimed error in the exclusion of his proposed testimony, its argument strongly suggests that is the case. The State notes in its argument, for example, that "Brown's proffer does not even indicate *where* Brown allegedly abandoned the truck, *when* he did so or what he meant by having or seeking 'better prospects.' " The only indications in the record of what testimony Brown proposed to give were a one-sentence paraphrase by his counsel ("I drove the truck there and I abandoned it for better prospects.") and the court's similarly terse summary ("[H]e did have possession of the vehicle, left the vehicle at a truck stop and left the keys and left.").

¶ 17. WISCONSIN STAT. § 901.03(1) and (1)(b) provides that error "may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." The supreme court has explained the dual purpose of the offer-of-proof requirement: "Two purposes are served by an offer of proof: first, provide the circuit court a more adequate basis for an evidentiary ruling and second, establish a meaningful record for appellate review." *State v. Dodson*, 219 Wis. 2d 65, 73, 580 N.W.2d 181 (1998).

¶ 18. The supreme court also explained in *Dodson* that not "every offer of proof should be accompanied by a question and answer format," because there "are cases in which the evidentiary problem posed is easily resolved by statements of counsel." *Id.* at 74. Nonetheless, the court concluded that "the circuit court did not have an adequate basis to make an evidentiary ruling on the offers of proof received through statements from de-

fense counsel." *Id.* at 76. The court also endorsed our conclusion in *Milenkovic v. State,* 86 Wis. 2d 272, 285 n.10, 272 N.W.2d 320 (Ct. App. 1978), that the "question and answer" format is the preferred method for making offers of proof:

> We conclude that offers of proof made in this manner will significantly reduce the possibility that trial counsel will inadvertently fail to offer to prove a crucial fact upon which the conclusion or inference which he seeks to establish necessarily depends. We also believe such a procedure will assist the trial court and any reviewing court in determining whether the evidentiary hypothesis can actually be sustained or the offer is overstated. Although the question and answer method of making an offer of proof may take a little more time, it [will] enable the trial court and reviewing court to approach the evidentiary problem with some confidence that the evidentiary problem really exists.

*Dodson,* 219 Wis. 2d at 74.

¶ 19.  Brown did not request an opportunity to give his testimony outside the presence of the jury as an offer of proof, and he did not submit an affidavit or other statement detailing what he planned to say. We thus do not know when or where Brown would have claimed he abandoned the truck, or whether he would have attempted to give an account of his subsequent movements. It is therefore difficult for us to determine whether his testimony would have truly constituted an alibi ("I was elsewhere.") as the State claims, or simply an attempt to negate certain elements of the charged offenses, as Brown suggests.[6] Without a proper offer of proof, neither we nor the trial court can know with

---

[6] Operating a motor vehicle without the owner's consent is committed when a person "intentionally drives or operates any vehicle without the consent of the owner." WIS. STAT.

certainty what the contours of Brown's testimony would have been, or whether his testimony and the cross-examination it would necessarily invite, taken as a whole, would constitute an alibi defense.[7]

¶ 20. In short, we conclude that Brown's offer of proof was inadequate for us to conclude on appeal that the testimony he wanted to give was not an alibi requiring notice under Wis. Stat. § 971.23(8). *See, e.g., State v. Robinson,* 146 Wis. 2d 315, 329, 431 N.W.2d 165 (1988) (concluding "that the offer of proof by the defendant did not state an evidentiary hypothesis underpinned by a sufficient statement of facts to enable this court to conclude with reasonable confidence that

§ 943.23(3). Theft of movable property, as charged in this case, involves "[i]ntentionally . . . conceal[ing] . . . movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property." Wis. Stat. § 943.20(1)(a). Brown's arguments on appeal suggest that, rather than claiming to be elsewhere, the import of his testimony would have been that he did not intentionally operate the truck without its owner's consent, nor did he intend to conceal or deprive the Hartford couple of their possessions.

[7] Brown argued in the trial court that he would not give direct testimony regarding where he claimed to have gone or with whom, and those matters would not come out until cross-examination. Thus, in Brown's view, it would be the State and not he that would introduce his alibi. He does not renew this argument on appeal, but we note our skepticism that the requirements of Wis. Stat. § 971.23(8) can be so easily circumvented. If a defendant were to take the stand and say nothing more about his lack of participation in the charged crime than "I wasn't there," the obvious first question for cross-examination would be, "Well, then where were you?" We would be hard pressed to conclude that such a scenario would not constitute an "inten[t] to rely upon an alibi as a defense," § 971.23(8)(a), entitling the State to notice in advance of trial of the information set forth in the statute.

the evidentiary hypothesis could be sustained"); *State v. Padilla*, 110 Wis. 2d 414, 430, 329 N.W.2d 263 (Ct. App. 1982) (" 'An offer of proof need not be syllogistically perfect but it ought to enable a reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained and is not merely an enthusiastic advocate's overstated assumption.' ") (citation omitted).

■

¶ 21.   Finally, we note that Brown does not argue that if his proposed testimony was subject to the statutory notice-of-alibi requirement, the trial court nevertheless erred in excluding it for lack of notice. Even if he had made this claim, however, we would reject it. The court offered Brown a continuance to comply with the requirement. There is nothing in the record to indicate Brown would have been prejudiced by a postponement of the trial for a reasonable time in order for him to give proper notice under Wis. Stat. § 971.23(8). Accordingly, we find no reversible error in the trial court's discretionary ruling to exclude the proposed testimony.[8]

■

¶ 22.   We next consider the issue of Wisconsin's territorial jurisdiction over Brown for the offenses of which he was convicted. Brown asserted in his postconviction motion that his trial counsel was ineffective for not seeking dismissal of the charged offenses for lack of

---

[8] Brown also asserted in his postconviction motion that the exclusion of his proposed testimony violated his rights under the United States and Wisconsin Constitutions to testify and to present a defense. He does not renew and thus abandons this assertion on appeal. Accordingly, we do not address any constitutional dimensions of the trial court's ruling. *See, e.g., State v. Burroughs*, 117 Wis. 2d 293, 303–05, 344 N.W.2d 149 (1984), and *id.* at 312–13 (Bablitch, J., dissenting).

territorial jurisdiction, and that the trial court erred in not instructing jurors on the State's burden to prove the crimes were committed in Wisconsin. On appeal, he makes only the latter claim, and we deem the claim of ineffective assistance of counsel for failure to seek a dismissal abandoned.[9]

██

¶ 23. The question of whether or when a jury must be instructed on the State's burden to establish its territorial jurisdiction over a defendant for charged offenses appears to be one of first impression in Wisconsin. *See* WIS JI—CRIMINAL 268. We conclude that a jury instruction on territorial jurisdiction is required only when a genuine dispute exists regarding the facts necessary to establish Wisconsin's territorial jurisdiction over a charged crime. Because no such dispute existed in this case, the trial court did not err in failing to instruct the jury on the jurisdictional issue.[10]

¶ 24. The Sixth Amendment to the United States Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public

---

[9] Brown does make an alternative argument of ineffective assistance of counsel regarding the jury instruction issue on the chance we might deem counsel's efforts to obtain a territorial jurisdiction instruction inadequate to preserve the issue for direct review. The State concedes that trial counsel made a sufficient record at the instructions conference to preserve the issue for review, and we agree. See ¶ 10 and footnote 4, above.

[10] The State argues in the alternative that if an instruction was required, the venue instruction the court gave (see ¶ 10) "adequately covered any factual issue concerning territorial jurisdiction." Because we conclude no territorial jurisdiction instruction was required, it is not necessary for us to decide whether the court's venue instruction adequately addressed territorial jurisdiction.

trial, by an impartial jury of the State and district wherein the crime shall have been committed." WISCONSIN STAT. § 939.03(1) provides as follows:

> (1) A person is subject to prosecution and punishment under the law of this state if:

> (a) The person commits a crime, any of the constituent elements of which takes place in this state; or

> (b) While out of this state, the person aids and abets, conspires with, or advises, incites, commands, or solicits another to commit a crime in this state; or

> (c) While out of this state, the person does an act with intent that it cause in this state a consequence set forth in a section defining a crime; or

> (d) While out of this state, the person steals and subsequently brings any of the stolen property into this state.

Brown makes no claim that § 939.03(1) does not comport with the Sixth Amendment. Rather, he argues that the trial court should have given a separate instruction addressing the applicable jurisdictional criteria under § 939.03(1) instead of relying on the venue instruction. He contends the instruction given by the court was not sufficient to inform the jury of its obligation to determine whether territorial jurisdiction for the charged crimes existed in Wisconsin.

■

¶ 25. There is no dispute that the State is obligated in all prosecutions to establish its territorial jurisdiction over a defendant for charged crimes. *See Hotzel v. Simmons*, 258 Wis. 234, 240, 45 N.W. 2d 683 (1951) ("It is elementary that a court may act only upon crimes committed within the territorial jurisdiction of

the sovereignty seeking to try the offense."). The question is whether the determination that territorial jurisdiction over a defendant for charged crimes exists in Wisconsin is to be made by the court or a jury. We are satisfied that the proper answer to this question is that it depends on the circumstances in a given case. In its "Law Note" on territorial jurisdiction, the Criminal Jury Instruction Committee states its conclusion

> that if the jurisdiction issue depends upon contested issues of fact, those issues are for the jury to determine, using the beyond a reasonable doubt standard. If the charging document does not properly allege that the crime was committed within the territorial jurisdiction of the state of Wisconsin, the trial court should grant a motion to dismiss. If there is a dispute about jurisdiction that presents a purely legal question, that is, whether the law confers jurisdiction over [a defendant for a given crime based on] an undisputed factual situation, that question should be decided by the court. But if the charging document sufficiently alleges facts in support of jurisdiction and there is a dispute about those facts, the issue will be for the jury to decide.

WIS JI—CRIMINAL 268.

¶ 26. The committee cites *State v. Bratrud*, 204 Wis. 2d 445, 448–49, 555 N.W.2d 663 (Ct. App. 1996),[11] and two Pennsylvania cases, *Commonwealth v Mull*, 175 A. 418 (Pa. 1934), and *Commonwealth v. Bighum*, 307 A.2d 255 (Pa. 1973) in support of its conclusion. We

---

[11] We note that in *Bratrud*, we referred to the issue as one of subject matter jurisdiction, but we have since concluded that territorial jurisdiction is more akin to personal jurisdiction, in that it may, in some circumstances, be waived. *See State v. Randle*, 2002 WI App 116, ¶¶ 13–16, 252 Wis. 2d 743, 647 N.W.2d 324, *review denied*, 2002 WI 109, 254 Wis. 2d 262, 648 N.W.2d 477 (Wis. Jun. 11, 2002) (No. 01–1448–CR).

agree that the committee's conclusion finds persuasive support in the authorities it cites, as well as in a more recent Indiana case:

> [T]his court endorses today ... [the position] that if there is no serious evidentiary dispute that the trial court has territorial jurisdiction, then a special instruction on territorial jurisdiction need not be given to the jury. This view is consistent with those states that have addressed the issue ....

*Ortiz v. State,* 766 N.E.2d 370, 375–76 (Ind. 2002).

¶ 27. We must next inquire, therefore, whether the facts necessary for Wisconsin to exercise jurisdiction over Brown for the crimes of which he was convicted were in dispute. We conclude that they were not, thus relieving the trial court of the obligation to instruct the jury on territorial jurisdiction.

¶ 28. The State first argues that Wisconsin properly exercised its territorial jurisdiction under WIS. STAT. § 939.03(1)(b) because a "constituent element" of each crime of which Brown was convicted undisputedly took place in this state. The State would have us define "constituent element" as "those material *acts* of the defendant, committed in Wisconsin, that are integral to proving an essential element of the charged crime." There is no dispute that Brown took possession of the truck and household goods in Wisconsin. In the State's view, that act was "integral" to its proving Brown's subsequent operation of the truck without consent and his concealment of the household goods, and there was thus no need for the jury to be instructed on territorial jurisdiction.

¶ 29. Brown counters that one cannot separate a defendant's acts from the prohibited intent required to render the acts elements of a crime. That is, according

143

to Brown, a "full element" must take place in Wisconsin in order to confer territorial jurisdiction. He asserts that because his possession of the household goods and operation of the truck in Wisconsin were entirely consensual, no element of either crime—operation of the truck without consent, intentional concealment of the goods with intent to deprive owners permanently of possession—took place until after he left the state. At a minimum, Brown argues, there was a factual issue as to when and where the elements of the crimes took place.

¶ 30.   We conclude that it is not necessary for us to decide in this case whether something less than a "full element" of a crime may be a "constituent element" of the crime for purposes of WIS. STAT. § 939.03(1)(b), or if the statute requires that a "full element" take place within Wisconsin's borders. Rather, we conclude that the State is on firmer ground in claiming that Wisconsin's territorial jurisdiction over Brown's crimes was beyond factual dispute because his out-of-state acts were done "with intent that [they] cause in this state a consequence set forth in a section defining a crime." Section 939.03(1)(c).

¶ 31.   Our opinion in *State v. Inglin*, 224 Wis. 2d 764, 592 N.W.2d 666 (Ct. App. 1999) is instructive on this issue. Instead of taking their child on a camping trip to Colorado as he promised his ex-wife, who had primary placement of the child, the defendant in *Inglin* took the child to Canada intending to keep the child with him permanently. *Id.* at 769. The defendant was convicted of two counts of interfering with child custody, one of which was for intentionally concealing the child from the other parent. *Id.* at 769–70; *see* WIS. STAT. § 948.31(3). On that charge, the defendant argued that Wisconsin lacked territorial jurisdiction because the concealment took place entirely in Canada. *Id.* at 777.

144

We concluded, however, that the child's concealment in Canada caused in Wisconsin a consequence set forth in § 948.31(3)(a) because the prohibited concealment "made more difficult the discovery" of the child by the other parent who resided here. *Id.* at 778–79. In so concluding, we relied in part on the supreme court's holding in *Poole v. State*, 60 Wis. 2d 152, 156, 208 N.W.2d 328 (1973), that " 'a person may be prosecuted for doing an act outside this state which has *a criminally proscribed consequence within the state.*' " *Inglin*, 224 Wis. 2d at 779–80 (emphasis added by *Inglin* court).

¶ 32.  Even if Brown committed no "constituent element" of either crime in Wisconsin, we conclude that his out-of-state acts were, beyond factual dispute, intended to cause criminally proscribed consequences in Wisconsin. WISCONSIN STAT. § 943.23(3) renders it a crime to intentionally drive or operate "any vehicle without the consent of the owner." The direct and prohibited consequence of a defendant's operation of a vehicle without its owner's consent is that the owner is deprived of the right to control the use of the vehicle. Brown had the owner's permission to drive the truck and its contents to a storage facility in Indianapolis. At whatever point Brown elected to depart from that mission, his operation became nonconsensual, thereby depriving his Wisconsin employer of its right to direct the employment of the tractor-trailer for its intended business purpose. Thus, regardless of whether Brown's nonconsensual operation occurred in Wisconsin, Illinois or Indiana, it caused a "criminally proscribed consequence" in Dane County, Wisconsin.

¶ 33.  The jurisdictional inquiry regarding Brown's second conviction, for theft by concealment of the household goods, tracks even more closely with our analysis of WIS. STAT. § 939.03(1)(c) in *Inglin*. WISCONSIN

STAT. § 943.20(1)(a) makes it a crime to intentionally conceal "movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property." Our conclusion in *Inglin* that Wisconsin was the situs of a proscribed consequence of criminal concealment applies as well to the Hartford couple who entrusted their household goods to Brown as it did to the Wisconsin mother who entrusted her child to the father for a brief trip. In both cases:

> (1) . . .the element of concealment includes the intent to "prevent[] or make[] more difficult the discovery of the child by the other parent," [or, here, the movable property by its owner]; and (2) preventing or making such discovery more difficult produces "a consequence" under § 939.03(1)(c), STATS., and is "an act outside this state which has a criminally proscribed consequence within the state."

*Inglin*, 224 Wis. 2d at 783 (citations omitted). As in *Inglin*, Brown's concealment of the household goods in Illinois or Indiana "was inseparable from the *consequences* of that concealment in Wisconsin." *Id.* at 779.

¶ 34. We acknowledge, as Brown argues in his reply brief, that a distinction might be drawn from *Inglin* in that the owners of the concealed household goods, unlike the mother in *Inglin*, were in the process of relocating to another state. We reject, however, Brown's assertion that the owner's impending change of residence to Indiana deprives Wisconsin of territorial jurisdiction under WIS. STAT. § 939.03(1)(c). On the date that Brown was entrusted with the household goods in Wisconsin, at least one of the owners was still living in Wisconsin. The truck and contents did not appear at their designated destination the next day, and thus the couple's household goods were "concealed" from that

146

moment onward. Regardless of whether the owners were in the process of relocating to Indiana, we conclude that a criminally proscribed consequence occurred in this state. At least one of the owners was arguably still a Wisconsin resident on the date of the crime, and Wisconsin's territorial jurisdiction over Brown for the theft did not evaporate simply because the principal victims of the crime thereafter established residence in another state.[12]

¶ 35. In addition, the moving company, a Wisconsin business, had a strong practical and legal interest in discovering the whereabouts of the items: it was bailee of the goods and faced liability for the owners' loss. The facts regarding the Wisconsin company's extensive efforts to locate the goods are undisputed, and the bailee's discovery of their location was prevented or made more difficult by Brown's concealment, thus producing a statutorily proscribed consequence in Wisconsin. *See Inglin*, 224 Wis. 2d at 783.

¶ 36. Brown does not argue that even if his actions caused criminally proscribed consequences in Wisconsin, he did not *intend* for them to do so, as is required under WIS. STAT. § 939.03(1)(c). Neither does he claim that there is a factual dispute on this point. The only reasonable inference possible from the undisputed trial testimony is that Brown knew that the

---

[12] The trial court commented as follows on this issue at the postconviction hearing:

The property was delivered from the [Hartford couple] to [Brown] in the State of Wisconsin. The property was then conveyed outside of the State of Wisconsin by the defendant where the jury found he concealed it . . . . [T]he owner, then leaves the State of Wisconsin, [and] the State of Wisconsin has no interest or public policy reason to -- well, you know, now you left the State of Wisconsin, tough, you aren't entitled to protection under our criminal system? That is a ridiculous interpretation as a matter of public policy.

owner of the truck (his employer) was located in Wisconsin, and that his May 18th shipment originated from a residence in Wisconsin. Knowing these facts, Brown's operation of the truck without its owner's consent and his concealment of the shipment could only have been done with the intent that the acts would cause criminally proscribed consequences in Wisconsin. We therefore conclude that no facts necessary for territorial jurisdiction over Brown for the two crimes under § 939.03(1)(c) were in dispute, and accordingly, the trial court did not err by not instructing jurors on territorial jurisdiction.

## CONCLUSION

¶ 37.   For the reasons discussed above, we affirm the appealed judgment and order.

*By the Court.*—Judgment and order affirmed.